## SUPREME COURT.

THE PEOPLE, &c., ex rel. ELLEN McINTYRE agt. HENRY A. HURLBURT et al., as commissioners of emigration of the state of New York.

*Pauper immigrants — Commissioners of emigration — Their powers and duties as to such immigrants — When courts will not interfere with their action.*

Congress has the right to regulate the terms upon which immigrants shall be allowed to enter this country, and have also the power to determine the manner and means by which such protection shall be afforded.

Where the commissioners of emigration (who are the agents of the United States) certify that they have made an examination, and that they have found that the relators are persons unable to take care of themselves without becoming a public charge:

*Held,* that upon this state of facts, the commissioners had a right to say that they should not be permitted to land, and this court, upon *habeas corpus,* cannot interfere with their action.

The commissioners of emigration, by taking the relators from the steamship and into their custody, and permitting them to land for the purpose of making the necessary examination, in order to ascertain whether, under the laws, they should be permitted to enter the country, do not lose their jurisdiction.

*N. Y. Chambers, August,* 1884.

PATRICK CARNEY, his wife and seven children, and Adam Slovitz, detained emigrants who landed on the sixteenth day of July, from the Furnesia, were brought before this court at chambers upon a writ of *habeas corpus,* and their discharge asked for.

*Alfred Steckler,* for application.

*Kelly & MacRae,* in opposition.

VAN BRUNT, J. — By the act of congress relating to emigration to the United States, it is provided that the secretary of the treasury is charged with supervision over the business of emigration to the United States, and for that purpose he

The People, &c., *ex rel.* McIntyre agt. Hurlburt *et al.*

was empowered to enter into contracts with such state commission, board or officers, as might be designated for that purpose by the governor of any state, to take charge of the local affairs of immigration in the ports within said state. Said act further provides that it shall be the duty of such state commission or officers so designated to examine into the condition of passengers arriving at the ports within such states in any ship or vessel, and for that purpose all or any of such commissioners or officers, or such other person or persons as they shall appoint, shall be authorized to go on board of and through any such ship or vessel, and if on such examination there shall be found among such passengers any convict, idiot, or any person unable to take care of himself or herself, without becoming a public charge, they shall report the same to the collector of such port, and such persons shall not be permitted to land.

It is not necessary to discuss here the power of the congress of the United States to regulate the terms upon which immigrants shall be allowed to enter this country. It is clear that congress has the right, and it has not yet been held that the states have not that right, to prohibit pauper immigration, and therefore has also the power to determine the manner and means by which such protection shall be afforded.

They have therefore provided for contracts to be made by the secretary of the treasury with certain state boards, who, for the purposes of the immigration laws, thereby become the agents of the United States. Certain powers are conferred upon such agents, and when acting within the line of their duty, I can see no power vested in this court to interfere with them. In the cases now before the court, the commissioners certify that they have made an examination and that they have found that the relators are persons unable to take care of themselves without becoming a public charge. Upon this state of the record, the commissioners had a right to say that they should not be permitted to land, and this court, upon *habeas corpus,* cannot interfere with their action.

It is urged, however, that because the relators have been taken from the steamship and have been taken into the custody of the commissioners of emigration, that they have been permitted to land, and that all jurisdiction by the commissioners has been lost.

It must be observed that the examination need not be upon the ship, and the only reference to the vessel is in connection with a power given to the commissioners to go on board and through any vessel for the purposes of such examination, but the act nowhere requires the examination to be held upon shipboard. It is true that the relators have been allowed to leave the ship, and thus may be said to have been permitted to land; but the language of the act is to be construed not literally, but in the light of the duties to be performed under it. The relators are under the custody of the agents of the United States government, having been there placed in order that the examination might be made to ascertain whether, under the laws, they should be permitted to enter the country, and it is this permission which is evidently referred to in the act where it speaks of permission to land.

Could it be argued for a moment that if the relators had been taken possession of by the quarantine authorities and placed in one of their hospitals upon one of the islands in the bay, for sanitary reasons, and before they had come under the jurisdiction of the commissioners of emigration, that such commissioners would have no authority to exercise the powers conferred upon them by congress?

It seems to me that this illustration clearly shows that no technical meaning is to be given to the words "permitted to land," but that they are to be construed as referring to a permission to enter the country, and I am therefore of the opinion that the writs should be dismissed.