## In re PALAGANO et al.

*(Circuit Court, S. D. New York. April 12, 1889.)*

1. APPEAL—REVIEW—DECISION OF COMMISSIONER OF EMIGRATION.
   Decision of commissioners of emigration as to indigent immigrants not to be reversed by collector.
2. IMMIGRATION—DETENTION.
   Removal from ship and detention by commissioners of emigration for purposes of examination not a landing.

*(Syllabus by the Court.)*

*Habeas Corpus.*

The relators are immigrants who arrived at the port of New York on 13th February, 1889, on the Utopia, from Naples, Italy. The commissioners of emigration, after an examination, determined that they were liable to become a public charge, and so reported to the collector of the port. For the purposes of the examination the relators were removed from the ship, and after the ship started on her return voyage they were kept at Wards' island by the commissioners. The collector, after the receipt of the report of the commissioners of emigration, heard

other evidence as to the relators' condition, and determined that they were not likely to become a public charge. The relators sued out a writ of *habeas corpus* directed to the collector and the commissioners of emigration.

*Joseph J. Marrin, Jr.,* for petitioners.

*Stephen A. Walker,* U. S. Atty., and *Abram J. Rose,* Asst. U. S. Atty., for the collector.

*Kelly & MacRae,* for the commissioners of emigration.

LACOMBE, J., *(orally, after stating the facts as above.)* This is the position of affairs as I understand it: These persons challenge their detention. It appears as matter of fact that they are now actually restrained of their liberty by the commissioners of emigration. Upon inquiry as to why this is, it is shown, in the first place, that the commissioners determined that they were unable to take care of themselves, and were likely to become a public burden. Therefore they were, under the language of the statute of 1882, persons who should not be permitted to land. I am inclined to follow the decision of the supreme court of this state in *People* v. *Hurlburt,* 67 How. Pr. 356, and to hold that it was not in reality a landing when they were removed from the ship to a place entirely in the control of the commissioners, for the express purpose of making an examination with regard to their condition. The commissioners made their examination, and sent their report to the collector, so that the relators are evidently not now held or detained for the purpose of further examining into their condition. Under what authority, then, do the commissioners still hold them? I find by the statute that it is made the duty of the secretary of the treasury to carry out the provisions of the act,—to prevent the landing of, and thus practically to send back, all individuals who are by these commissioners found to be likely to become a public charge. Of course, the secretary cannot do that by his own personal acts. He employs agents for the purpose. It further appears that he has so employed agents in this port, viz., these commissioners; and that they are holding the women until proper provision can be made for their return. It seems, therefore, that they hold them under the authority of the secretary of the treasury, conferred upon them by subdivision 2 of the treasury order of September 1, 1885. I am satisfied that there is no power in the collector of the port to reverse the action of the commissioners in determining the *status* of these persons, and think that there is sufficient in subdivision 2 to warrant the emigrant commissioners, as the agents of the secretary of the treasury, in keeping these persons in a suitable place until some arrangement can be made with the steam-ship company to conveniently return them to the port whence they came. If there are peculiar circumstances, as suggested on the argument, which would tend to modify the former finding of the commissioners of emigration, such facts should be laid before them. They do not become *functus officii* by a single decision, but may review such decision whenever justice requires such action. Writ dismissed.